IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

E-ONE, Inc.,                              )
                                          )
              Plaintiff,                  )
                                          )        No.   06 CV 1391
       v.                                 )
                                          )        Judge Robert W. Gettleman
OSHKOSH TRUCK CORPORATION,                )
                                          )
              Defendant.                  )

## MEMORANDUM OPINION AND ORDER

Plaintiff E-One, Inc. ("E-One") filed a five-count complaint[1] against defendant Oshkosh

Truck Corporation ("Oshkosh") alleging violations of federal and Illinois antitrust law, as well

as tortious interference with prospective economic advantage.  Defendant moved to dismiss the

complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated

below, the motion to dismiss is granted.

## FACTS

Plaintiff and defendant design and manufacture fire rescue vehicles and provide

customers with after-sale coverage, which includes service, parts, and training.  Both parties

have a worldwide market.  Defendant's market share in the Chicago region was 83.6% at the

time of the actions described in the complaint; plaintiff's market share in the same region was

8.2%.

Beginning in 1991, plaintiff sold its products in the Chicago region through a dealer,

Mid-America Truck and Equipment Company, Inc. ("Mid-America").  In the fall of 2005, Mid-

---

[1]Plaintiff voluntarily dismissed Count III, which alleged a violation of § 4 of the Clayton
Act.

America encountered financial troubles, and in September 2005 plaintiff entered negotiations with Inland Detroit Diesel Allison, Inc. ("Inland") to replace Mid-America as plaintiff's Chicago-area dealer.

Plaintiff alleges that by late February of 2006, Inland had "agreed in principle" to become plaintiff's dealer in the Chicago region. Inland contacted Allison Transmission ("Allison"), a company for whom Inland was the exclusive distributor. Allison manufactured transmissions and sold them through Inland to truck manufacturers, including defendant. Allison and Inland had a contract with a provision precluding Inland from selling and servicing other manufacturers' products within the same facilities used to sell Allison products. According to plaintiff, Inland asked Allison not to enforce this contractual provision, to which Allison agreed. Inland then began contacting plaintiff's customers to relay that Inland would be the new E-One dealer for the Chicago area.

According to plaintiff, E-One and Inland were to sign a formal contract on March 3, 2006. On that day, defendant called Inland to object to the agreement between Inland and plaintiff. Later that day, defendant again called to inform Inland that it would cancel its $17 million of annual business with Inland if Inland signed a contract with plaintiff. Such business consisted of providing services to Oshkosh trucks; Inland did not act as a dealer for Oshkosh products. Defendant also informed Inland that if the contract with plaintiff became final, Inland personnel would not be allowed into defendant's facilities to perform services pursuant to existing contracts between Inland and defendant.

Later that day, Allison contacted Inland to advise that it would enforce the contractual provision prohibiting Inland from selling plaintiff's products in facilities where Allison's

products were also sold.  Plaintiff alleges that Allison made this decision because of pressure from defendant.  Additionally, Detroit Diesel Corporation ("Detroit"), a manufacturer for whom Inland was the exclusive dealer, advised Inland that defendant would prohibit Inland from providing service to Detroit products on defendant's property if Inland signed a contract with plaintiff.

On March 7, 2006, Inland told plaintiff that it was terminating the arrangement with plaintiff and would not execute a formal contract because it could not survive the loss of its account with defendant.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits.  Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim."  Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999).  When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Szumny v. Am. Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir. 2001).

Counts I and II

Count I of the complaint alleges attempted monopolization in violation of § 2 of the Sherman Act, 15 U.S.C. § 2.  Count II alleges a violation of § 3(3) of the Illinois Antitrust Act, 740 ILCS 10/3(3).  Because § 3(3) of the Illinois Antitrust Act was modeled upon § 2 of the Sherman Act, Illinois courts apply federal antitrust law to resolve questions arising under the

state statutory provision.  <u>Burris v. Panhandle E. Pipe Line Co.</u>, 935 F.2d 1469, 1479-80 (7th Cir. 1991); <u>Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc.</u>, 162 Ill. 2d 99, 104-08 (1994).[2]

To plead attempted monopolization under § 2 of the Sherman Act (and, consequently, § 3(3) of the Illinois Antitrust Act), a plaintiff must allege: "(1) a specific intent to monopolize, i.e., to gain the power to control prices or to exclude competition in a line of commerce, (2) predatory or anticompetitive acts engaged in to further the purpose to monopolize, and (3) a dangerous probability of success in the relevant market which requires evidence that the defendant had sufficient market power to have been reasonably able to create a monopoly." <u>Lektro-Vend Corp. v. Vendo Co.</u>, 660 F.2d 255, 270 (7th Cir. 1982).

Plaintiff has sufficiently alleged the first and third elements.  Paragraph 33 of the complaint alleges that Oshkosh had "the specific intent of monopolizing the relevant market." Plaintiff alleges that "there is a dangerous likelihood that a monopoly in the relevant markets will be established or maintained," and in support of this claim plaintiff alleges that defendant had an 83.6% market share.

Plaintiff's claim fails, however, because it does not allege predatory or anti-competitive acts on the part of defendant.  "'The anti-trust laws do not prohibit a manufacturer or distributor from selecting dealers who will devote their time and energies to selling the former's products and a manufacturer is not compelled to retain dealers having divided loyalties adverse to the interests of the said manufacturer or distributor.'" <u>Timken Roller Bearing Co. v. FTC</u>, 299 F.2d

---

[2]The Illinois Antitrust Act is narrower in scope than § 2 of the Sherman Act; the Illinois law requires an improper purpose, while the federal law does not.  <u>Gilbert's Ethan Allen Gallery</u>, 162 Ill. 2d at 104.  This distinction, however, does not change the court's ruling on the instant motion.

839, 842 (6th Cir. 1962), citing <u>McElhenny Co., Inc. v. Western Auto Supply Co.</u>, 167 F. Sup.

949, 954 (W.D.S.C. 1958), <u>aff'd</u>, 269 F.2d 332 (4th Cir. 1959).

Defendant, then, cannot be forced to continue a relationship with a dealer who chooses to distribute products of defendant's competitor. Inland's relationship with defendant, though, does not even rise to the level of manufacturer and distributor; Inland merely services defendant's products. If defendant cannot be compelled to maintain such a relationship with a dealer, the antitrust laws certainly do not mandate one with a service provider. The court therefore grants defendant's motion as to Counts I and II.

<u>Count IV</u>

Count IV alleges exclusive dealing by defendant in violation of § 3(4) of the Illinois Antitrust Act, 740 ILCS 10/3(4), which states, in relevant part:

> Every person shall be deemed to have committed a violation of this Act who shall:...
>
> > (4) Lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, or services...on the condition, agreement, or understanding <u>that the lessee or purchaser thereof</u> shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodity or service...of a competitor or competitors of the lessor or seller, where the effect of such lease, sale or contract for such sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce...[Emphasis added.]

Defendant moves to dismiss, asserting that the statute does not apply to the instant case. This statutory provision applies only when the lessee or purchaser of services agrees not to use the goods or services of the lessor's or seller's competitor. In the instant case, Oshkosh is the purchaser of services, and Inland, which allegedly made an agreement not to deal with

Oshkosh's competitor, is the seller, not vice versa.  Such an arrangement does not fall within the parameters of § 3(4).  The court therefore grants defendant's motion as to Count IV.[3]

Count V

Count V alleges tortious interference with prospective economic advantage.  To state a claim under this theory, a plaintiff must allege: "'(1) [her] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference.'"  Int'l Marketing, Ltd. v. Archer-Daniels-Midland Co., 192 F.3d 724, 731 (7th Cir. 1999), quoting Dowd & Dowd, Ltd. v. Gleason, 181 Ill.2d 460, 484 (Ill. 1998).

Plaintiff has sufficiently alleged each of the required elements.  As defendant points out, however, competition is a complete defense to this cause of action.  Int'l Marketing, Ltd., 192 F.3d at 724.  As noted above, the allegations of the complaint establish that plaintiff and defendant are competitors.  Because defendant's actions are not predatory or anti-competitive, its pressure on Inland not to handle plaintiff's products cannot constitute tortious interference with plaintiff's prospective economic advantage.  Defendant's motion to dismiss is therefore granted as to Count V.

_____

[3]To claim that an exclusive dealing arrangement violates § 3(4) of the Illinois Antitrust Act, plaintiff must also allege "substantial" foreclosure from the marketplace.  Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 327 (1961).  Plaintiff has not alleged that defendant's actions excluded it from the market in any capacity; in fact, plaintiff is still a market participant.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted.

**ENTER:**     **November 13, 2006**

_____
**Robert W. Gettleman**
**United States District Judge**